IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY DUNKEL,<br>    Plaintiff<br><br>    v.<br><br>MT. CARBON / NORTH MANHEIM FIRE COMPANY d/b/a MT. CARBON FIRE COMPANY, LARRY MOORE, CHRIS WALTERS, KYLE STROKELITUS, ROSE BOOTERBAUGH, LEN RADZIEWICZ, CAL ETHERINGTON,<br>    Defendants. | Docket No: 13-cv-638 |

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDMENT CLAIM

Respectfully Submitted,

**CLYMER MUSSER & CONRAD, P.C.**

__/s/ Joshua M. Autry_____
Joshua M. Autry, Esq.
I.D. # 208459
Emily M. Bell, Esq.
I.D. # 208855
Attorneys for Plaintiff
408 West Chestnut Street
Lancaster PA 17603
(717) 299-7101

Dated: October 10, 2013

I.  ARGUMENT

   A.  **Defendants who fired Mayor Dunkel for making comments "in a public forum" cannot now deny that Mayor Dunkel did so.**

Defendants suspended Mayor Dunkel after he orchestrated a search party for a man missing in the community. Mayor Dunkel had posted on Facebook to plan the search party and schedule the meeting. When suspended for holding the meeting, Mayor Dunkel returned to Facebook to point out that the Defendants frustrated the search by suspending him. Defendants, in turn, fired Mayor Dunkel for posting on Facebook and (in their own words) "in a public forum." Defendants now ask this Court to ignore the facts and their prior admissions in order to hold otherwise: that Mayor Dunkel made no public statements at all. This Court cannot so blindfold itself. To the contrary, this Court must view the facts in the light most favorable to Mayor Dunkel and take all inferences in his favor.

The Amended Complaint initially explains the matter of public concern, a search for a missing person:

> 15.  On February 5, 2012, a man in the community went missing. Mayor Dunkel, as a friend of the man's family, offered to help the family in any way that he could.
>
> 16.  During late February and early March, the Mayor assisted the family in organizing searches for the missing man. These searches occurred in the mountain area which stretches the length of the neighboring City of Pottsville and is located to the rear of the Company.
>
> 17.  As the Company was in close proximity to the search

1

      area, its parking lot was used as a public meeting point on numerous occasion for family, friends, and other volunteers to review the plans for future searches.

18. At one Sunday night meeting, the Company's building was utilized for this purpose and approximately 20 people attended for less than an hour. At least a half a dozen fire fighters and officers from the Company attended the meeting. Following the meeting, many of the people involved remained to socialize and drank beverages, some of which were alcoholic.

19. In spite of the fact that many attendees were fire fighters or officers of the Company, and no minors were even alleged to have consumed alcohol, Mayor Dunkel's membership in the Company was terminated by the trustees without any notice to the mayor.

Viewing these facts in the light most favorable to Mayor Dunkel, "The search for a missing person was a significant matter of public concern." Am. Compl. ¶ 75. Defendants cannot deny that the search for a missing person—and the termination of the person leading that search—constitute matters of concern to the public.

    Because of the public significance of the search, "Mayor Dunkel had previously posted about the search on his own Facebook page and on a Facebook page created for the missing person search." Am. Compl. ¶ 22. Specifically, "Mayor Dunkel had posted on Facebook explaining the search and the purpose of the search meeting that the Company used to justify Mayor Dunkel's suspension." Am. Compl. ¶ 23. Accordingly, when suspended for holding a search party meeting, Mayor Dunkel posted on Facebook that the Defendants frustrated this

2

important search for a missing person:

> 21. After his suspension, Mayor Dunkel had posted on Facebook calling the trustees "cowards" for suspending him in a meeting without notice, and complaining that the trustees suspended him for helping a family in need. Mayor Dunkel "tagged" some of the trustees to his post.

The Defendants decided to terminate Mayor Dunkel, at least in part, because of Mayor Dunkel's public comments on Facebook:

> 32. According to [President Larry Moore], Mayor Dunkel was terminated for having the search party meeting at which non-members of the Company consumed alcohol and for posting critical comments related to the Company on Facebook.

The Defendants wrote in **two** separate letters that Mayor Dunkel's comments took place "in a public forum" and "in a public format." Am. Compl. ¶ 34, 40. In one letter explaining the charges, Defendants wrote, "Jeff posted on face book about possibility of charges for leaking a search and or rescue of a missing person thus discussing company business ***in a public forum.***" Am. Compl. ¶ 34 (emphasis added). In another letter, Defendants explained this charge as, "JEFF POSTED ON FACEBOOK ABOUT POSSIBILITY OF CHARGES FOR LEADING A SEARCH AND/OR RESCUE OF A MISSING PERSON THUS DISCUSSING COMPANY BUSINESS ***IN A PUBLIC FORMAT.*** … COMMENTS ON FACEBOOK WHERE SO HORRIBLE THAT HIS ACCOUNT WAS REPORTED AS OFFENSIVE AND INAPPROPRIATE FOR THEIR FORMAT

important search for a missing person:

> 21. After his suspension, Mayor Dunkel had posted on Facebook calling the trustees "cowards" for suspending him in a meeting without notice, and complaining that the trustees suspended him for helping a family in need. Mayor Dunkel "tagged" some of the trustees to his post.

The Defendants decided to terminate Mayor Dunkel, at least in part, because of Mayor Dunkel's public comments on Facebook:

> 32. According to [President Larry Moore], Mayor Dunkel was terminated for having the search party meeting at which non-members of the Company consumed alcohol and for posting critical comments related to the Company on Facebook.

The Defendants wrote in **two** separate letters that Mayor Dunkel's comments took place "in a public forum" and "in a public format." Am. Compl. ¶ 34, 40. In one letter explaining the charges, Defendants wrote, "Jeff posted on face book about possibility of charges for leaking a search and or rescue of a missing person thus discussing company business ***in a public forum.***" Am. Compl. ¶ 34 (emphasis added). In another letter, Defendants explained this charge as, "JEFF POSTED ON FACEBOOK ABOUT POSSIBILITY OF CHARGES FOR LEADING A SEARCH AND/OR RESCUE OF A MISSING PERSON THUS DISCUSSING COMPANY BUSINESS ***IN A PUBLIC FORMAT.*** … COMMENTS ON FACEBOOK WHERE SO HORRIBLE THAT HIS ACCOUNT WAS REPORTED AS OFFENSIVE AND INAPPROPRIATE FOR THEIR FORMAT

AND ALL COMMENTS WERE DELETED." Am. Compl. ¶ 40-41 (italics added).

Viewing the evidence in the light most favorable to Mayor Dunkel, this Court should let this claim proceed through discovery. Notably, the Defendants themselves twice claimed that Mayor Dunkel's statements were public. **<u>Defendants essentially ask this Court to conclude as a matter of law that they were lying when they said that Mayor Dunkel made public comments.</u>** That this Court cannot do. In addition, Mayor Dunkel was involved in an online community surrounding the search before his suspension. A Facebook page had been created for the search itself where Mayor Dunkel posted updates and about meetings, including the scheduling of the very search party meeting Defendants cite as the reason for his suspension. Taking inferences in his favor, his post after the meeting cannot be separated from the posts before. The posts are all related: Defendants fired Mayor Dunkel for holding this search party meeting, frustrating an important search for a man missing in the community. Mayor Dunkel has not only pled notice, he has pled facts. For that matter, he has pled admissions by the Defendants that evidence the public nature of his comments.

Defendants rely on *Versarge v. Township of Clinton*, 984 F.2d 1359 (3d Cir. 1993). However, in *Versarge*, the fire company presented undisputed evidence that the speech "created major disruption." 984 F.2d at 1366. In this case, on the other

4

hand, there is no evidence of disruption at the Fire Company.

The Third Circuit has explained:

> It should not be the least surprising that accusations of impropriety would cause some disruption; that does not necessarily negate the public nature of those accusations. As we explained in *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1062 (3d Cir. 1989), an employee's interest in exposing wrongdoing by public officials outweighs any incidental disruption that follows. "[I]t would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office." *Id.* We also explained that disruption, even to the extent of demoralization, is not enough to overcome the First Amendment's protection of the public nature of such speech. *Id.*

*Stump v. Richland Twp.*, 278 Fed. Appx. 205, 207 (3d Cir. Pa. 2008). Although *Stump* is not precedential, it quotes and relies on *O'Donnell*, a decision binding on this Court.

As in *Stump* and *O'Donnell,* Mayor Dunkel had a profound interest in criticizing the Company's hostile response to his actions in orchestrating the search of a missing man. Defendants have not demonstrated any disruption by his speech. Defendants should not get a presumption of disruption; rather, Mayor Dunkel is entitled to discovery to disprove any claim by the Defendants that his comments caused disruption. Even if the Defendants could claim some form of disruption, it would be "absurd" to allow them to use that disruption as a shield to punish whistleblowers.

5

## II. CONCLUSION:

For the foregoing reasons, this Court should deny Defendants' motion to dismiss.

Respectfully Submitted,

**CLYMER MUSSER & CONRAD, P.C.**

__/s/ Joshua M. Autry_____
Joshua M. Autry, Esq.
I.D. # 208459
Emily M. Bell, Esq.
I.D. # 208855
Attorneys for Plaintiff
408 West Chestnut Street
Lancaster PA 17603
(717) 299-7101

Dated: October 10, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email address(es):

Bryon R. Kaster     kasterb@dmclaw.com, mstabley@dmclaw.com

Christine L. Line     cline@dmclaw.com

 /s/ Joshua M. Autry  
Joshua M. Autry, Esquire

Dated:  October 10, 2013